IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN HALL, | ) | CASE NO. 1:10-cv-1340 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| KIMBERLY CLIPPER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

This matter is before the Magistrate Judge pursuant to Local Rule 72.2.

Petitioner, Joan Hall ("Hall"), challenges the constitutionality of her conviction in the

case of *State v. Hall*, Case No. CR-05-475449-C (Cuyahoga County 2007).  Hall filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 16, 2010 in the

United States District Court for the Northern District of Ohio.  For the reasons set forth

below, Hall's petition should be DENIED.

I

The September 2005 term of the Cuyahoga County Grand Jury indicted Hall on

one count of engaging in a pattern of corrupt activity, 18 counts of tampering with

records, one count of possessing criminal tools, two counts of theft, one count of  illegal

use of food stamps, 52 counts of forgery, and one count of money laundering.  A

petition for forfeiture of seized contraband accompanied the indictments.  The indictments resulted from an investigation indicating that Hall; her daughter, Lisa Hall; and Roger Neff engaged in a fraudulent retail refund scheme taking place over a period of fifteen years and across twenty-eight states.  The appellate court hearing Hall's direct appeal found that the state proved beyond a reasonable doubt that Hall stole $258,941.34 from TJX Corporation, Sears, Saks Fifth Avenue, J.C. Penney, and the Ohio Department of Human Services.

Hall pleaded not guilty to all counts.  Before trial, Hall moved to suppress evidence seized from searches of Hall's house, bank deposit boxes, and other property.  After a hearing, the court denied the motion with respect to all evidence except a mailed item seized without a warrant on November 23, 2005.

Hall waived her right to a jury trial, and the case was tried to the bench.  The state nolled two counts of forgery prior to a verdict.  After hearing the evidence, the court found Hall guilty on all remaining counts of the indictment.  On July 31, 2007, the court sentenced Hall to concurrent sentences totaling for seven years' imprisonment, imposed a total of $355,000 in fines, and ordered $258,941.34 in restitution.

A.      *Direct appeal*

Hall timely appealed her conviction and sentence.  Hall asserted six assignments of error on appeal:

First Assignment of Error

R.C. 2913.46(C)(1) applies to organization's and employee's acts committed within the scope of employment.  Joan Hall's illegal use of food stamps was based on applications in her name and for personal use unrelated to any employment.  The trial court erred by finding Ms. Hall guilty under R.C. 2913.46(C)(1) in the absence of sufficient evidence.

-2-

Second Assignment of Error

A charge of theft of between $100,000 and $500,000 under R.C. 2913.02 requires proof of the amount stolen.  By failing to address the specific amount stolen, the State failed to prove theft of between $100,000 and $500, 000 beyond a reasonable doubt.  Consequently, the trial court violated Ms. Hall's right to due process under the Ohio and United States Constitutions when it convicted Ms. Hall in the absence of sufficient evidence of the amount of the theft.

Third Assignment of Error

Restitution is only valid when it is statutorily authorized.  Between July 1, 1996, and March 23, 2000, R.C. 2929.18(A) limited restitution to "economic loss," which was defined in terms of "criminally injurious conduct," which was itself defined as conduct that "imposes a substantial threat of personal injury or death."  Since Ms. Hall's conduct did not impose a threat of personal injury or death, the trial court erred by ordering restitution for her offenses during that period.

Fourth Assignment of Error

The amount of restitution awarded by the trial court is not supported by the record.  By imposing that restitution without a sufficient factual basis, the court violated Ms. Hall's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article 1 of the Ohio Constitution.

Fifth Assignment of Error

Courts have the authority to order fines only as empowered by statute.  RICO violations under R.C. 2923.32(B)(2)(a) authorize fines of three times the gross value gained through corrupt activity in lieu of the statutorily authorized fine under R.C. 2929.18.  The trial court erred by imposing fines under both R.C. 2929.32(B)(2)(a) and R.C. 2929.18.

Sixth Assignment of Error

Courts are authorized to order fines under R.C. 2929.18(A).  Fines in excess of the statutory maximum are illegal, and a court lacks jurisdiction to impose them. The trial court committed plain error by imposing fines in excess of the conventional maximum fines allowed under R.C. 2929.18(A)(3).

The state appellate court overruled Hall's first, second, third, and fourth assignments of

error.  The appellate court sustained Hall's fifth assignment of error insofar as the state had improperly fined Hall $20,000 in addition to awarding triple restitution when those penalties could not both have been imposed.  The state appellate court also sustained Hall's sixth assignment of error, finding that the trial court had improperly computed the total amount of Hall's fines.  The court remanded the case to the trial court to eliminate the improperly-imposed $20,000 fine and to otherwise correct the journal entry with respect to the amount of Hall's fines.  On September 9, 2009, the trial court issued a corrected journal entry complying with the state appellate court's order.

Hall timely filed a notice of appeal to the Ohio Supreme Court.  In her memorandum in support of jurisdiction, Hall asserted three propositions of law:

Proposition of Law No. I:

A charge of theft of between $100,000 and $500,000 under R.C. 2913.02 requires proof beyond a reasonable doubt of the amount stolen.  The specific amount is not proven beyond a reasonable doubt if jurisdiction is not established, the State's witnesses rely on summary information provided by the State, and records are not authenticated.  A trial court violates a defendant's right to due process under the Ohio and United States Constitutions when it convicts the defendant in the absence of sufficient evidence of the amount of the theft.

Proposition of Law No. II:

It is contrary to law to impose restitution for conduct, between July 1, 1996 and March 23, 2000, that did not impose [sic] a threat of personal injury or death.  Improper imposition of restitution in such a circumstance is reversible plain error and violates the Ex Post Facto and Due Process Clauses of the Ohio and United States Constitution.

Proposition of Law No. III:

Imposing restitution without sufficient factual basis violates a defendant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

-4-

On June 17, 2009, the Ohio Supreme Court denied Hall leave to appeal and dismissed her appeal as not involving any substantial constitutional question.

B.      *Motion for a new trial*

On July 26, 2007, Hall filed in the trial court a motion for a new trial.  Hall contended that documents seized from her home and recently obtained by Hall constituted exculpatory evidence that had been withheld from her in violation of Ohio Criminal R. 16.  The state argued that (1) Hall had been given access to the information in the documents and (2) even if the documents had been newly discovered they would not have changed the outcome of the trial.  After holding a hearing on the matter, the trial court dismissed the motion on August 13, 2007.  Hall did not appeal the trial court's decision.

C.      *Adjudication of forfeiture*

On August 30, 2007, Hall filed in the trial court a motion to join Lisa Hall's motion to dismiss or contest the state's motion for forfeiture.  The trial court conducted a hearing over the matter on September 12-13, 2007.  On February 29, 2008, Hall filed a new motion to dismiss the motion for forfeiture.  On February 2, 2009, the trial court granted the state's forfeiture motion in part and denied it in part.  The court held that all United States currency seized by law enforcement and all of Hall's investment accounts were subject to forfeiture.  It also held that other personal property held by the state should be returned to Hall.

Hall timely appealed the trial court's decision.  In her brief in support of her appeal, Hall asserted three assignments of error:

-5-

First Assignment of Error

> Because the State failed to pursue forfeiture under former R.C.
> 2923.32(B) and failed to include in the indictment the forfeiture language
> required by that section and R.C. 2981.04, the trial court had no authority
> to order forfeiture.  The court's error deprived Ms. Hall of the right to have
> the Grand Jury pass on the forfeiture and deprived her of the right to due
> process under the Ohio and United States Constitutions.

Second Assignment of Error

> The double jeopardy clause of the Ohio and United States Constitutions
> prohibits both multiple prosecutions and multiple punishments for the
> same offense.  Forfeiture authorized under the criminal code constitutes
> punishment.  A forfeiture hearing held after a conviction becomes a final
> order constitutes a second prosecution.  The court violated Ms. Hall's
> constitutional right to be free from double jeopardy when it held a forfeiture
> hearing after it had entered a final order in the underlying case and
> ordered forfeiture of her property.

Third Assignment of Error

> Under either former R.C. 2923.32(B) or R.C. 2981.04, the State failed to
> sustain its burden to prove that the cash it seized from Ms. Hall was
> subject to forfeiture. Therefore, the court violated Ms. Hall's right to due
> process under the Ohio and United States Constitutions.

On April 26, 2010, the state appellate court overruled Hall's assignments of error and

affirmed the judgment of the trial court.

Hall timely filed a notice of appeal of the appellate court's decision in the Ohio

Supreme Court.  In her memorandum in support of jurisdiction, Hall asserted four

propositions of law:

Proposition of Law No. I:

> In a RICO prosecution initiated before the enactment of R.C. 2981.04, the
> trial court has no authority to order forfeiture if the State fails to include in
> the indictment the forfeiture language required by former R.C. 2923.32(B)
> and by R.C. 2981.04.

-6-

Proposition of Law No. II:

> Under former R.C. 2933.43(F), the forfeiture of property seized in relation
> to a RICO violation is controlled by former R.C. 2923.32(B)(3) and (B)(4)
> and by R.C. 2981.04.  Property seized as contraband used in the
> commission of one of the predicate felonies upon which a RICO violation
> is based constitutes "property that is lawfully seized in relation to" the
> RICO violation for the purposes of former R.C. 2933.43(F) and R.C.
> 2981.04.

Proposition of Law No. III:

> In a RICO prosecution that began before the enactment of H.B. 241 and in
> which the State failed to include forfeiture language in the indictment as
> required by former R.C. 2923.32(B), the court must determine whether it is
> "practical" to apply the amended statute as provided in Section 4 of Sub.
> H.B. 241.  Here, because both the former statute and R.C. 2981.04
> require the forfeiture proceeding to be initiated in the indictment, the trial
> court erred when it applied R.C. 2981.04 without enforcing its indictment
> requirement.

Proposition of Law No. IV:

> *State v. Baker*, 119 Ohio St. 3d 197, 2008-Ohio-3330, 893 N.E.2d 163,
> applies to entries granting forfeitures in criminal cases.

On August 25, 2010, the Ohio Supreme Court denied Hall leave to appeal and

dismissed her appeal as not involving any substantial constitutional question.

D.    *Post-conviction motions and petitions*

During the pendency of Hall's direct appeal, she filed in the trial court a total of

21 motions, among other things, including motions for bond, for the return of personal

property, for reconsideration of sentence, and for a stay of execution of fines and costs.

On September 9, 2009, the trial court denied all of these motions.

Hall appealed the decisions of the trial court.  She filed two merit briefs in

support of her appeal.  Appellee moved to strike both briefs as failing to comport with

the rules of appellate procedure.  The state appellate court granted both motions to

strike and dismissed the appeal.  Hall did not appeal this decision to the Ohio Supreme
Court.

On October 9, 2007, Hall filed in the trial court a petition for post-conviction
relief, alleging inappropriately harsh sentencing in light of her mental and emotional
problems, her failure to testify at sentencing and in forfeiture proceedings, new facts
presented in earlier briefing, prosecutorial misconduct, a circumstantial case, the
withholding of exculpatory evidence, unethical police and prosecutorial tactics, media
harassment, false admissions, misconduct by her accusers, insufficient evidence of
guilt, improper search warrants, and wrongful conviction.  On February 27, 2008, Hall
filed a second petition for post-conviction relief, alleging prosecutorial misconduct,
abuse of a grand jury, misconduct by her accusers, misuse of media, harassment by the
media, reverse discrimination, and improper reliance on circumstantial evidence and a
circumstantial case.  On June 9, 2008, Hall filed an amended petition for post-conviction
relief, alleging denial of her right to confront witnesses and to be present at every critical
stage of the proceedings against her, denial of the right to a public trial, denial of the
right to a jury trial, and ineffective assistance of trial counsel.  The allegations of
ineffective assistance of trial counsel included failure to object to Hall's absence from in-
chambers proceedings and to an off-site visit, failure to introduce evidence of mental
problems for purposes of mitigation, and failure to obtain expert testimony.

On September 15, 2009, the trial court addressed Hall's petitions in a single
opinion.  The court found the first petition to be without merit and to be barred by *res
judicata.*  It found the second petition to be unsupported by proper evidentiary materials
or barred by *res judicata*.  The trial court construed her third petition as a motion to

amend and granted leave to file such a motion in part except that it denied leave to file the attached supplement.  The court found that there were no judicial proceedings requiring Hall's presence in chambers or off-site.  Consequently, there was no basis for Hall's claims that she was deprived of her rights to be present and confront witnesses and no basis for her assertion that her attorney rendered ineffective assistance by failing to object to Hall's absence in chambers or off-site.  The court also found that Hall had properly waived her right to a jury trial and that there was no factual basis for her claim that she was deprived of her right to a public trial.  Finally, the court found that Hall had not been prejudiced by any failure to obtain expert testimony.

Hall timely filed in the state appellate court a notice of appeal of the trial court's decision.  On December 11, 2009, the state appellate court *sua sponte* dismissed Hall's appeal for failure to file an appellate brief pursuant to Ohio App. R. 18(C).  Apparently, Hall submitted an appellate brief to the clerk of the state appellate court, but she put the wrong case number on the submission.  Consequently, the clerk of the state appellate court filed the brief in another case, *i.e.*, the case designated by the mistaken number on Hall's submission.  By the time Hall realized the error and corrected it, the time for filing a timely appellate brief had passed.  Hall filed a motion to reconsider the dismissal, and the state appellate court denied the motion as moot, as the brief she filed had been filed in another case.  Hall then filed a motion to correct the alleged typographical error that had caused her appellate brief to be filed in the wrong case.  The state appellate court denied the motion and reiterated its dismissal of her case for failure to comply with state and local appellate rules.  Hall moved to reconsider, and the state appellate court denied Hall's motion.

Hall timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decisions.  In her memorandum in support of jurisdiction, Hall asserted a single proposition of law:  "The denial of appellate review of a Post Conviction Petition on a technicality, especially when review is requested by a pro se litigant, contradicts the law and spirit of the law and does not further the interest of justice."[1]  On June 23, 2010, the Ohio Supreme Court denied Hall leave to appeal and dismissed her appeal as not involving any substantial constitutional question.

E.      *Untimely forfeiture litigation*

On December 4, 2009, Hall filed in the state appellate court a notice of appeal of the forfeiture of some of her assets.  Hall asserted three assignments of error in her appeal:

Assignment of Error I

The trial court improperly liquidated . . . annuities in error per Ohio Revised Code 2329.66.

Assignment of Error II

The court erred in failing to require good cause to be shown, to notice the appellant or allow appellant to participate in challenging said action.

Assignment of Error III

Trial court erred in seizing, holding and liquidating documented life insurance annuities thus unlawfully interfering with appellant['s] and beneficiaries['] rightful use.

Hall's filing was untimely by nearly nine months.  On June 1, 2010, state appellate court dismissed Hall's appeal as both untimely and barred by *res judicata*.

_____

[1]  The index to Hall's memorandum in support of jurisdiction listed "Proposition of Law I" and "Proposition of Law II" without specifying the content of either proposition.  The body of the memorandum, however, included only the proposition of law described above.

-10-

F.      *Jail time credit*

On December 15, 2009, Hall filed in the trial court a motion for jail time credit, contending that she should be given jail time credit for the time she spent in at-home confinement prior to her conviction.  The trial court denied the motion without hearing on January 19, 2009.

On February 19, 2010, Hall filed in the state appellate court a notice of appeal. In her appellate brief, Hall's single assignment of error contended that the trial court erred in failing to grant her jail time credit for at-home detention.  On March 11, 2010, the state appelalte court dismissed Hall's appeal for failure to file a timely notice of appeal.  Hall did not appeal this decision to the Ohio Supreme Court.

On May 12, 2010, Hall filed in the trial court a motion for jail time credit, contending that she should be given jail time credit for detention for three days at the Richmond Heights Police Department, for 157 days at the Cuyahoga County Jail, and for 468 days of at-home confinement.  The trial court denied Hall's motion on May 17, 2010.

On June 2, 2010, Hall filed in the state appellate court a notice of appeal.  In her brief in support of her appeal, Hall asserted a single assignment of error:  "Electronic monitoring is 'detention' for prosecuting the crime of escape; it should likewise be "detention" for time crediting purposes pursuant to 2921.01(E) and 2949.08."  The state appellate court has not issued a decision in this appeal.

G.      *Delayed application to reopen an appeal*

On June 29, 2010, Hall filed in the state appellate court a motion for leave to file a delayed application to reopen her appeal pursuant to Ohio Appellate Rule 26(B),

-11-

alleging ineffective assistance of appellate counsel.  In particular, Hall alleged that

counsel had been ineffective in the following respects:

A.    Failure to conduct any investigation.
B.    Discovery violations-including withholding evidence.
C.    Lack of time to review untimely discovery.
D.    Improper authentication of bank records.
E.    Improper admission of exhibits containing inadmissible information.
F.    Fourth Amendment violation of unreasonable search and seizure,
      including obtaining private bank records without a warrant- ineffective
      appellate counsel failed to present this critical assignment of error.
G.    Sequestration issues involving TJX employees.
H.    Warrantless arrest in home in violation of the Fourth Amendment.
I.    Repeated use of 404(B) evidence resulting in violation of due process.
J.    Improper admission of alleged "confession" to William Dammarell, acting
      as a state agent.
K.    Defective indictment and bill of particulars lacking any specificity
      necessary to prepare a defense.
L.    Admission of expert testimony by non-expert and/or without proper
      Daubert hearing.
M.    Improper admission of "business records" that were maintained only in
      preparation for litigation.
N.    Manifest weight.
O.    Jurisdiction.
P.    Repeated violation of gag order.
Q.    Excessive, cruel and unusual punishment in violation of the Eighth
      Amendment.
R.    Defense counsel hired by and controlled by co-defendant with antagonistic
      goals/motives.
S.    Double Jeopardy-subject to two prosecutions and two sentences by
      holding and ordering forfeiture of assets after sentencing entry.
T.    Ineffective assistance of trial counsel – ". . . NOT ONE pre-trial motion was
      authored or submitted by Joan Hall's counsel, Mr. Spellacy. . . . Lisa Hall,
      Joan Hall's co-defendant, who was responsible for hiring Mr. Spellacy." . .
      . The entire context of this unusual case was completely ignored and
      uninvestigated by counsel. The long and significant mental health history
      and background of the Appellant was NEVER addressed by counsel. . .
      Counsel made NO attempts to investigate, research or even contact any
      of these critical sources of exculpatory. . . .
      1.    Failed to request the requested subpoenas.
      2.    Object to the repeated violation of the gag order.
      3.    Ask for mistrial over the misconduct as to discovery abuses (over
            3000 pages handed over DURING trial)
      4.    Address the public declaration of guilt by Judge Fuerst's Bailiff,

-12-

Judy Krulac even before trial began and at a public professional gathering where Judge Fuerst and her husband were present.

5. Failed to object to Mark Stanton's request for a 6-month delay in the trial schedule for his personal reasons. Appellant never signed a waiver of speedy trial at this juncture, as it is well known that in "paper cases" time wholly benefits the prosecution.

6. Failed to object to the jurisdictional issue at the ONSET. In fact, he failed to do so at any time, only Mr. Stanton did finally at the end of the trial.

7. Failed to object to the presence of TJX executives who sat in on the trial and then coached each TJX witness.

8. Failed to object to the improper use of the RICO statute to circumvent any statute of limitations and against the legislative intent. WHERE IS THE ENTERPRISE SEPARATE AND DISTINCT?

9. Failed to obtain waiver as to conflict of interest by being hired and paid by a co-defendant with possible/likely adversarial objectives. Not to mention that he was a defacto partner in the same firm as Mr. Stanton, co-defendant's counsel.

10. Failed to advise Appellant that at the time he was hired he had 3 capital cases pending and over 20 other trials pending.

11. Being paid a flat fee would encourage him to make decisions that would expedite all of the proceedings and not in the best interest of the client.

12. Mr. Spellacy failed to prepare any sentencing memorandum or to prepare any mitigating evidence or statement at what was undeniably a complicated and important sentencing proceeding.

13. Failed to prepare any pretrial motions and despite repeated requests, failed to prepare an interlocutory appeal on any issue let alone the pivotal suppression hearing ruling.

14. Failed to secure a time for national expert, David Smith of Washington, D.C. to testify even though he appeared in Cleveland solely for that purpose.

15. Failed to object to the forfeiture proceedings taking place AFTER sentencing when it is to take place as part of the sentencing and is considered an integral part of the sentence.

16. Failed to motion for recusal of Judge Fuerst due to her signing the initial and critical first search warrant.

17. Failed to attach the required affidavit to the Motion for New Trial therefore the motion was dismissed on this technicality.

U. Deprived of right to an open and public trial, to be present at every critical stage of the proceedings and to confront accusers.

1. Though the Judge states that the proceedings held at Richmond Heights Police Department were not a formal hearing, this provides little excuse for prohibiting and excluding the defendants to

-13-

participate. . . .

2.    Furthermore, Appellant was significantly and irreparably prejudiced by being deprived of her right to participate in this critical stage of these proceedings. . . .

3.    It is unrefined that, TJX companies was permitted to conduct proceedings in chambers and off-record, giving testimony by way of examination all while Appellant was sitting in an empty courtroom.

4.    Appellant was threatened and coerced by her own counsel to waive a jury. In fact, the trial was delayed by THREE days while defense counsel repeatedly and persistently forced Appellant into the on record waiver. Furthermore, it was indicated that the judge, already angry that a plea deal had not been extracted, would "further punish" Appellant if she insisted on a jury trial. Appellant was never counseled as to or understood the consequences of waiving one of the most fundamental constitutional rights.

5.    Without a jury, THERE IS ABSOLUTELY NO TENABLE REASON TO HAVE ANY IN CHAMBERS AND OFF THE RECORD PROCEEDING. One can only conclude by inference that it was with intent and disregard for Appellant's rights that this took place. . . . Clearly, the issue of waiving a jury was to save the court's time, a common thorn in the side of the Judge who consistently and repeatedly intimidated defense counsel to "move along."

V.    Judicial misconduct.

W.    Failure to prove theft of between $100,000 and $500,000 (new argument as to the original assignment of error).

X.    Deprived of a jury trial/coerced and threatened to waive this fundamental right.

Y.    No confession, no statement.

Z.    Non-credible witness.

Hall gave as good cause for her delayed application that "as a consequence of continued representation by Appellate counsel in other related appellate proceedings it was impossible for Appellant to file a timely 26(B) Application to Reopen Appeal."  On July 28, 2010, the state appellate court denied leave to file a delayed application to reopen.  Hall did not appeal the state appellate court's decision to the Ohio Supreme Court.

*H.*    *Federal habeas petition*

Hall filed in this court a petition for a federal writ of habeas corpus on June 16,

2010.  Hall did not assert any grounds for relief in her petition.  On the same day she

filed her petition, Hall also filed a motion for appointment of the Public Defender to

represent her in adjudicating her petition.  Doc. No. 2.  In her motion, Hall asserted the

following "colorable grounds" for relief:

> Assignments of error not considered because of appellate counsel's deficient representation
> A.  Failure to conduct any investigation.
> B.  Discovery violations-including withholding evidence.
> C.  Lack of time to review untimely discovery.
> D.  Improper authentication of bank records.
> E.  Improper admission of exhibits containing inadmissible information.
> F.  Fourth Amendment violation of unreasonable search and seizure, including obtaining private bank records without a warrant ineffective appellate counsel failed to present this critical assignment of error.
> G.  Sequestration issues involving TJX employees.
> H.  Warrantless arrest in home in violation of the Fourth Amendment.
> I.  Repeated use of 404(B) evidence resulting a in [sic] violation of due process.
> J.  Improper admission of alleged "confession" to William Dammarell, acting as a state agent.
> K.  Defective indictment and bill of particulars lacking any specificity necessary to prepare a defense.
> L.  Admission of expert testimony by non-expert and/or without proper Daubert hearing.
> M.  Improper admission of "business records" that were maintained only in preparation for litigation.
> N.  Manifest weight.
> O.  Jurisdiction.
> P.  Repeated violation of gag order.
> Q.  Excessive, cruel and unusual punishment in violation of the Eighth Amendment.
> R.  Defense counsel hired by and controlled by co-defendant with antagonistic goals/motives.
> S.  Double Jeopardy-subject to two prosecutions and two sentences by holding and ordering forfeiture of assets after sentencing entry.
> T.  Ineffective assistance of trial counsel . . . .
> U.  Deprived of right to an open and public trial, to be present at every critical stage of the proceedings and to confront accusers. . . .
> V.  Judicial misconduct.
> W.  Failure to prove theft of between $100,000 and $500,000 (new argument as to the arriginal [sic] assignment of error).

X.    Deprived of a jury trial/coerced and threatened to waive this fundamental
      right.
Y.    No confession, no statement.
Z.    Non-credible witness.

The court granted her motion on August 11, 2010, and an attorney from the Federal

Public Defender's office made an appearance the following day.  Doc. No. 10.

On December 12, 2010, Hall, through counsel, filed a motion termed an

Unopposed Motion for Leave to File Amended Petition for a Writ of Habeas Corpus.

Doc. No. 16.  Hall explained that the original *pro se* petition had been incomplete due to

Hall's age and infirmity and that an amendment was needed to clarify Hall's claims,

provide a sufficient factual basis for the claims Hall intended to pursue, and to eliminate

those claims which were unsupported by the record.  Hall argued in favor of liberally

granting amendment of habeas petitions.  Respondent answered that while she was

not, in principle, opposed to amendment of the petition, Hall had not attached a

proposed amendment to the motion to amend.  Doc. No. 16.  Consequently, respondent

was unable to determine whether any proposed amendment was in the interests of

justice.  For this reason, respondent asked that the motion to amend be denied until the

proposed amendment was attached to a renewed motion.

On February 9, 2011, Hall filed an amended petition.  Hall did not renew her

motion for leave to file the amendment before doing so, thus giving respondent no

opportunity to respond to Hall's proposed amendment.  The proposed amendment was

also deficient in several respects.  The court, therefore, struck the amended petition on

February 18, 2011 without prejudice to Hall's renewing a motion to amend her petition.

Hall renewed her motion to file an amended petition with the proposed

-16-

amendment attached.  Hall proposed amending the petition to include the following

grounds for relief:

> First Claim for Relief
> Ms. Hall was denied her constitutional rights as guaranteed by the Sixth, Fifth, and Fourteenth Amendments to the United States Constitution when she was excluded from *in camera* proceedings at trial.
>
> Second Claim for Relief
> Ms. Hall was denied her right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> Third Claim for Relief
> Ms. Hall's conviction rests on insufficient evidence in violation of the Due Process Clause. U.S. Const. Amend. 14.
>
> Fourth Claim for Relief
> The trial court lacked jurisdiction to convict Ms. Hall of thefts alleged to have occurred outside of the state of Ohio and did so in violation of the Due Process Clause.
>
> Fifth Claim for Relief
> Appellate counsel rendered ineffective assistance when counsel omitted meritorious issues from Ms. Hall's first appeal as of right to the Ohio court of appeals. U.S. Const. Amend. 14.

Respondent opposed Hall's motion.  On July 8, 2011, the court granted Hall's motion

upon the following conditions: (1) Hall shall file a new amended petition that eliminates

the defects in Hall's proposed fifth ground for relief; and (2) Hall shall file a brief, within

14 days this order, addressing (a) the issue of whether she has cause and prejudice for

her procedural defaults of her proposed first, second, fourth, and fifth grounds for relief

and (b) the merits of her proposed third ground for relief.  The court also allowed

respondent to file a brief in response to the amended petition.

Hall filed the required amended petition on July 22, 2011.  Hall asserts two

grounds for relief in her amended petition:

-17-

**First Ground for Relief:**  Ms. Hall's conviction rests on insufficient evidence in violation of the Due Process Clause. U.S. Const. Amend. 14.

**Second Ground for Relief:**  Ms. Hall was denied her right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

Respondent filed an Answer on September 17, 2010 and a brief in response to Hall's amendment of her petition on August 5, 2011.  Docs. No. 13, 29.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Hall.  Hall filed her writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of her incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic jurisdiction.  This court has jurisdiction over Hall's petition.

*B.  Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

-18-

hearing in the instant case.  All of Hall's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.      *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal

-19-

> courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Hall has no state remedies available for her claims.  Because no state remedies remain available to her, Hall has exhausted state remedies.

D.      *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted her claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

-20-

>First, the court must determine that there is a state procedural rule that is
>applicable to the petitioner's claim and that the petitioner failed to comply with
>the rule. . . . Second, the court must decide whether the state courts actually
>enforced the state procedural sanction.  . . . Third, the court must decide
>whether the state procedural forfeiture is an  "adequate and independent" state
>ground on which the state can rely to foreclose review of a federal constitutional
>claim. . . . This question generally will involve an examination of the legitimate
>state interests behind the procedural rule in light of the federal interest in
>considering federal claims. . . . [Fourth, if] the court determines that a state
>procedural rule was not complied with and that the rule was an adequate and
>independent state ground, then the petitioner must demonstrate . . . that there
>was "cause" for him to not follow the procedural rule and that he was actually
>prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

petitioner demonstrates that not excusing the default "will result in a fundamental

miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent argues that Hall has procedurally defaulted her second ground for

relief, ineffective assistance of trial counsel.[2]  The court agrees, but not for the reasons

provided by respondent.

Hall raised her claim of ineffective assistance of trial counsel in her amended

petition for post-conviction relief.  The trial court examined the merits of this claim and

found that trial counsel had not been ineffective because counsel had not committed the

errors alleged by Hall.  Hall timely filed in the state appellate court a notice of appeal of

the trial court's decision.  On December 11, 2009, the state appellate court *sua sponte*

dismissed Hall's appeal for failure to file an appellate brief pursuant to Ohio App. R.

18(C).

Hall timely filed in the Ohio Supreme Court a notice of appeal of the state

---

[2] Respondent raised the defense of procedural default in his Answer/Return of Writ,
Doc. No. 13.

appellate court's decisions.  In her memorandum in support of jurisdiction, Hall asserted a single proposition of law:  "The denial of appellate review of a Post Conviction Petition on a technicality, especially when review is requested by a pro se litigant, contradicts the law and spirit of the law and does not further the interest of justice."  On June 23, 2010, the Ohio Supreme Court denied Hall leave to appeal and dismissed her appeal as not involving any substantial constitutional question.

Ohio App. R. 18 advances Ohio's interest in the regularity of criminal convictions and does not implicate federal law.  *See, e.g., Normand v. McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000).  In *Normand*, the Sixth Circuit deferred to the state court's enforcement of its procedural rule in dismissing a pro se litigant's appeal for failure to file the requisite number of copies of the appellate brief, despite the pro se litigants request for an exception on grounds of indigency.  Indeed, the Sixth Circuit enforced the procedural default in *Normand* despite errors by the state appellate court and substantial compliance by Normand, writing "We acknowledge that Normand did request permission to waive that procedural rule, and although it may appear unfair to deny Normand an appeal when he has essentially complied with the requirements or moved for an exception to them, we do not have jurisdiction to revisit the sense and logic of the Ohio Rules of Appellate Procedure, or the decisions of Ohio courts enforcing them."  *Id.* at *5.  Consequently, the state appellate court dismissed Hall's appeal pursuant to an adequate and independent ground on which Ohio may rely to foreclose a federal constitutional claim.

Hall does not demonstrate cause and prejudice for her default.  Hall argues that cause for her default was the abandonment of her petition for postconviction relief by

her attorney.[3]  Because she lacked the benefit of an attorney, Hall implies, she committed the typographical error that resulted in the dismissal of her appeal.  However, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991).  Thus, the absence of counsel during litigation of Hall's postconviction petition and during her appeal of its denial may serve as cause for her default only if the entitlement to counsel at that stage of the proceeding is a clearly established constitutional right.

Postconviction relief in Ohio is governed by Ohio Rev. Code § 2953.21 ("§ 2953.21").  Section § 2953.21(J) states that proceedings pursuant to § 2953.21 are a collateral attack upon a conviction.

The Supreme Court has never held that there is a right to counsel in collateral, postconviction proceedings.  To the contrary, the Supreme Court has consistently held that there is no constitutional right to counsel in collateral proceedings.  *See Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *Murray v. Giarratano*, 492 U.S. 1 (1989).[4]  Thus, Hall has failed to demonstrate a constitutional right to an attorney in collateral, postconviction proceedings as established by a holding of the Supreme Court.  Because she had no constitutional right to an attorney during those proceedings,

---

[3]  Hall's attorney when she filed her initial petition for postconviction relief was the same attorney who had represented her during her direct appeal.  He ended his representation when Hall filed a motion to reopen her direct appeal pursuant to Ohio App. R. 26(B), alleging ineffective assistance of appellate counsel.

[4]  Moreover, Ohio's post-conviction proceedings are quasi-civil  in nature rather than criminal.  *State v. Nichols*, 11 Ohio St. 3d 40, 41-42, 463 N.E.2d 375, 377 (1984).  The Supreme Court has never held that a party in a civil or quasi-civil proceeding is entitled to an attorney.

the absence of an attorney during those proceedings may not serve as cause and prejudice for her procedural default in failing to file properly her appeal of the denial of postconviction relief.[5]

Finally, Hall does nothing to show that, even if there were a right to an attorney in collateral, postconviction proceedings, there is also a right to an attorney in an *appeal* from a decision in such proceedings. As the default that Hall seeks to excuse occurred on appeal, such a showing is necessary if Hall is to demonstrate cause and prejudice for her default.

In sum, Hall does not establish that there is a constitutional right to an attorney in postconviction proceedings or upon appeal of such proceedings. But it is clearly established that if there is no constitutional right to counsel, then it is not a constitutional violation if a party is deprived of the effective assistance of counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). Consequently, Hall does not establish that the

---

[5] Hall's attempt to establish a constitutional right to an attorney in collateral, postconviction proceedings by relying upon dicta in *Coleman* is unavailing. Hall relies upon the following language set forth in *Coleman*, by the Supreme Court : "For Coleman to prevail, . . . there must be an exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction. We need not answer this question broadly, however, for one state court has addressed Coleman's claims: the state habeas trial court." *Coleman*, 501 U.S. at 755. However, not only is this statement dicta, but the Court explicitly failed to address the issue that Hall seeks to support with that dicta. In addition, *Coleman* concluded that, even if there were a right to counsel in the state trial court on postconviction review (based on a Virginia statute governing the procedure), there was no right to counsel on appeal in state habeas proceedings; and, therefore, any "attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas." *Id.* at 757. *Coleman* did not establish an exception to the rule of *Finley* and *Giarratano* for the appeal of state collateral proceedings. Finally, even if the Court's statement could be read as establishing a right to counsel in postconviction proceedings, the statement in *Coleman* would be an insufficient basis on which to grant habeas relief because the statement is dicta rather than a holding of the Court. *See infra*, p. 25.

absence of her counsel was a constitutional violation sufficient to excuse her procedural default.

Because Hall fails to establish cause and prejudice for failing to file timely and appropriately an appeal brief from her postconviction petition challenging the effectiveness of her trial counsel, the court should not excuse that default.  For this reason, Hall's second ground for relief, ineffective assistance of trial counsel, should be dismissed.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006).; *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Hall's remaining ground for relief using the deferential standard applied to state court rulings on the petitioner's claims.

Hall contends that her conviction for theft offenses violated her right to due process because there was insufficient evidence to support her conviction.  In particular, Hall argues that her conviction for aggravated theft of an amount greater than $100,000 and less than $500,000 pursuant to Ohio Rev. Code § 2913.02(B)(2) was not supported

by sufficient evidence because the state never presented evidence of the actual amount of loss resulting from Hall's transactions and did not present any evidence as to which transactions were fraudulent.  Respondent replies that there was sufficient evidence produced at trial to support a determination that Hall had stolen more than $100,000 worth of merchandise.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.  *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness

credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

A claim that the evidence was constitutionally insufficient to support a conviction is a mixed question of law and fact.  *Starr v. Mitchell*, 2000 WL 1529807, at *3 (6th Cir. Oct. 6, 2000).  A petitioner may only obtain relief, therefore, by demonstrating that the state court's decision with respect to the facts or the application of a Supreme Court holding was "objectively unreasonable," thus resulting in a decision that involved an unreasonable application of clearly established federal law.  *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).  When a federal court examines a claim of insufficient evidence on habeas review to determine if the state court's decision was objectively unreasonable, it must give deference to both the trial court's verdict with respect to the elements of the claim and the appellate court's consideration of the verdict.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

The state appellate court reviewing the corresponding state claim on direct review found the following:

> {¶ 15} A review of the record shows that Derrick Carlson, a regional investigations manager for loss prevention at TJX, which is the parent company of TJ Maxx and Marshalls stores, testified that the total amount of transactions between 1998 and 2005 on credit or debit cards in the three defendants' names was $184,524.65.  Keith Thompson, a manager of investigations at Sears, testified that in that same time period, the defendant's receipts at Sears totaled $19,865.44.  This consisted of 43 returns, 17 exchanges, and 5 sales.  The above samplings are just two examples of the 54 witnesses who testified in this case.  Additionally, between 1998 and 2005, the defendants charged $61,310.33 to credit and debit cards; had $313,781.51 in credits to those accounts; and took out cash withdrawals of $245,225.42.

> {¶ 16} According to the court's August 16, 2007 judgment entry determining

-28-

restitution, which will be analyzed in more detail under defendant's third assignment of error, the State proved beyond a reasonable doubt that defendant stole $258,941.34 from the following entities: TJX Corporation, Sears, Saks Fifth Avenue, J.C. Penney, and the Ohio Department of Human Services (food stamps and Medicaid).

{¶ 17} Looking at this evidence in a light most favorable to the State, the court could have found that theft of over $100,000 occurred in the instant case.

*State v. Hall*, 2009 WL 270523, at *2-*3 (Ohio App. Feb. 5, 2009).

In reviewing the trial court's award of the amount of restitution, the state

appellate court found as follows:

{¶ 35} In the instant case, due to the length of time the indictment covered (15 years), the sheer amount of transactions in question, and the multiple ways in which defendant perpetrated her "refunding," it was difficult to ascertain a hard and fast dollar amount during the trial.  As such, the court held a restitution hearing, at which Carlson of TJX testified and was subject to cross-examination, as to specific details of economic losses for TJ Maxx and Marshalls, which he totaled at $158,468.  At the close of this hearing, the court stated the following regarding restitution:

{¶ 36} "It has been quite an undertaking in the view of the Court here because in a very frustrated manner I mentioned it was kind of a moving target.  I have taken, after great thought, I have taken Exhibit No. 10.  I believe it is in addition to some of the other exhibits in the trial and the record will go to the Court of Appeals in the event there is an appeal, but feel that the record supports the restitution pursuant to 2929.18(A)(1) as follows.  This will apply to Joan as she has been found guilty of the theft and the other activities.

{¶ 37} "For TJ Maxx I have found restitution in the amount of $159,322.28.  This is after working with the numbers at great time and expense to the Court I might add.  The Court will also at the request of this particular victim, there is a storage locker which I know for a fact is being used as I have with counsel have seen that locker to the tune of $5,376.  The Court will award that as a component of the restitution and also $2,156.04 for truck rental.  The rest of the request will be denied.

**\*6** {¶ 38} "Sears after crunching the numbers, the Court finds restitution in an amount of $17,449.27.  For Saks restitution, which is supported in the record, of $5,074.40.  J.C. Penney, $34,679 and $34,679.11, and the Ohio Department of Human Services for the food stamps, $16,249 and for the Medicaid benefits, $18,635.24.  Restitution totals $258,941.34."

-29-

{¶ 39} A review of the record shows these various amounts are supported by competent, credible evidence in the form of trial testimony, volumes of receipts and credit and debit card statements, and State's Exhibit 10, which consists of summary sheets for defendant's accounts, as well as pie charts and graphs.

*Id.* at *5-*6.

In support of her contention that the state courts erred in finding that there was sufficient evidence that Hall's thefts amounted to more than $100,000, Hall's entire argument consists of the following:  (1) although the state presented evidence of various transactions between all of the defendants and the retailers, there was never evidence presented that would tie the actual amount of the loss to Ms. Hall's transactions; (2) there was no evidence presented regarding which transactions were fraudulent; and (3) the state presented only summaries of the transactions from the retailers because the individual records of the transactions were lost.  Hall does not elaborate on any of these assertions or point to any evidence to support them.  This is woefully insufficient to prove by clear and convincing evidence that the state courts' finding that Hall's thefts totaled more than $100,000 was unreasonable.  Hall's argument also fails to prove that the state courts otherwise unreasonably applied a holding of the Supreme Court.

Hall does not demonstrate that the state courts' finding that her theft convictions were supported by sufficient evidence involved an unreasonable application of clearly established federal law.  Consequently, Hall does not demonstrate that she is entitled to federal habeas relief.  For this reason, her first ground for relief, that she was denied due process because there was insufficient evidence to support her conviction, should be dismissed as without merit.

-30-

IV.

For the reasons given above, Hall's petition should be DENIED.


Date:  September 7, 2011                    s/ Nancy A. Vecchiarelli
                                            United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.*